NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| OHAI, | x | |
| | x | |
| | x | Hon. Stanley R. Chesler, U.S.D.J. |
| Plaintiff, | x | |
| | x | Civ. No. 05-729 |
| v. | x | |
| | x | **OPINION** |
| | x | |
| VERIZON COMMUNICATIONS, | x | |
| INC., et. al, | x | |
| | x | |
| Defendants. | x | |
| | x | |

**CHESLER, District Judge**

This matter comes before the Court on a motion by the defendants, Cellco Partnership d/b/a Verizon Wireless (hereinafter "Verizon Wireless") and Verizon Communications, Inc. ("Verizon Communications") (1) to dismiss plaintiff's Fourth Amended Complaint and compel arbitration of plaintiff's claims against defendant Verizon Wireless; and (2) to dismiss the Fourth Amended Complaint against Verizon Communications for failure to state a claim upon which relief can be granted. [Docket Entry No. 13.] Defendant Vodafone, Plc. ("Vodafone") separately moves to dismiss plaintiff's claims against it for (1) lack of personal jurisdiction; (2) failure to state a claim upon which relief can be granted; or, alternatively, (3) to compel arbitration of plaintiff's claims against it. [Docket Entry No. 32.] For the reasons set forth below, the Court holds (1) the arbitration agreement between plaintiff and Verizon Wireless is enforceable and, therefore, plaintiff's claims against that defendant are stayed subject to the terms of the

agreement[1]; and (2) plaintiff's Fourth Amended Complaint fails to state a claim upon which relief can be granted against Verizon Communications and Vodafone and, therefore, plaintiff's claims against those defendants are dismissed.

I.      FACTS

Plaintiff Emmanuel Ohai, a Verizon Wireless customer, brings various claims[2] against defendants Verizon Wireless, Verizon Communications, and Vodafone arising from a dispute over a Verizon Wireless phone bill reflecting a $271.11 charge that, he alleges, may contain an improper early termination fee. (Fourth Am. Compl. at para. 22.) Plaintiff essentially claims that Verizon Wireless (1) failed to itemize purportedly delinquent charges (id. at para. 20-22, 57); (2) failed to adequately investigate his dispute (id. at para. 26-27); (3) wrongfully notified credit reporting agencies that the $271.11 debt was outstanding, and failed to advise them when the debt had been paid (id. at para. 29-37); (4) placed unauthorized and misleading charges on various wireless telephone bills (id. at para. 42-43); and (5) placed harassing phone calls to

---

[1] Section 3 of the Federal Arbitration Act authorizes the Court to stay an action, rather than dismiss, where all remaining claims are subject to arbitration. 9 U.S.C. § 3. Although defendant has moved for dismissal of plaintiff's claims, the Court finds that a stay pending arbitration is preferable under the circumstances. See Lloyd v. Hovensa, LLC, 369 F.3d 263, 270 (3d Cir. 2004). Therefore, Verizon Wireless' motion to dismiss is denied and the action is stayed pending restoration solely for those purposes set forth in the Federal Arbitration Act. See, e.g., 9 U.S.C. § 5 (allowing parties to seek relief from the court in resolving disputes regarding the appointment of an arbitrator or the filling of an arbitrator vacancy); 9 U.S.C. § 7 (allowing parties to seek relief from the Court in compelling the attendance of witnesses, or punishing the witnesses for contempt); 9 U.S.C. §§ 9, 10, 11 (allowing parties to seek from the Court a judgment on the award or an order vacating or modifying the award).

[2] Specifically, plaintiff asserts claims under the Federal Trade Commission Act, the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act, and the Georgia Fair Business Practices Act for punitive damages, actual damages, statutory damages, and injunctive relief. (Fourth Am. Compl. at para. 1.)

plaintiff in an effort to collect purportedly delinquent charges (id. at para. 52-54).

    A.    **The Arbitration Clauses**

On July 11, 2001, plaintiff signed a Cellular Service Order (the "CSO") with Verizon Wireless to obtain wireless phone service. (Certification of R. Jeffrey Nason dated July 1, 2005 ("Nason Cert.") para. 4, Ex. C.) Just above the signature line, the CSO states "BY SIGNING THIS FORM, YOU'RE AGREEING TO THE ATTACHED CELLULAR SERVICE AGREEMENT," which "sets your and our rights concerning . . . settlement of disputes by neutral arbitration instead of jury trials and class actions." (Id.) Indeed, the attached Cellular Service Agreement ("CSA") contains an arbitration clause that states:

> **INSTEAD OF SUING IN COURT, YOU'RE AGREEING TO ARBITRATE DISPUTES ARISING OUT OF OR RELATED TO THIS OR PRIOR AGREEMENTS. THIS AGREEMENT INVOLVES COMMERCE AND THE FEDERAL ARBITRATION ACT APPLIES TO IT. ARBITRATION ISN'T THE SAME AS COURT. THE RULES ARE DIFFERENT AND THERE'S NO JUDGE OR JURY. YOU AND WE ARE WAIVING RIGHTS TO PARTICIPATE IN CLASS ACTIONS, INCLUDING PUTATIVE CLASS ACTIONS BEGUN BY OTHERS PRIOR TO THIS AGREEMENT, SO READ THIS CAREFULLY. THIS AGREEMENT AFFECTS RIGHTS YOU MIGHT OTHERWISE HAVE IN SUCH ACTIONS THAT ARE CURRENTLY PENDING AGAINST US OR OUR PREDECESSORS IN WHICH YOU MIGHT BE A POTENTIAL CLASS MEMBER.** (We each retain our rights to complain to any regulatory agency or commission.) **YOU AND WE EACH AGREE THAT, TO THE FULLEST EXTENT PROVIDED BY LAW:**
>
> (1) ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, . . . WITH US OR, ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST, OR TO ANY PRODUCT OR SERVICE PROVIDED UNDER OR IN CONNECTION WITH THIS AGREEMENT . . . , WILL BE

>SETTLED BY INDEPENDENT ARBITRATION INVOLVING A
>NEUTRAL ARBITRATOR AND ADMINISTERED BY THE
>AMERICAN ARBITRATION ASSOCIATION ("AAA") UNDER
>WIRELESS INDUSTRY ARBITRATION ("WIA") RULES, AS
>MODIFIED BY THIS AGREEMENT.

(Nason Cert., Ex. A.)[3]  The CSA further gives Verizon Wireless the right to make changes to the terms of the agreement by providing a customer "WRITTEN NOTICE PRIOR TO THE BILLING PERIOD IN WHICH THE CHANGES WOULD GO INTO EFFECT."  (Id.)  The CSA states that, upon receipt of such notice, the consumer may cancel the contract if the changes adversely affect the customer's rates or service in a material way.  (Id.)

### B.    Claims Against Verizon Communications and Vodafone

Plaintiff also names Verizon Communications and Vodafone as defendants.  Plaintiff alleges that Verizon Communications is a 55% shareholder in Verizon Wireless that, "through its agents, directors, officers and employees oversees and supervises the operations of" Verizon Wireless.  (Fourth Am. Compl. at para. 6.)  Plaintiff alleges defendant Vodafone is also a parent company of Verizon Wireless, owns 45% of its shares, and, "through its agents, directors, officers and employees oversees and supervises the operations of" Verizon Wireless.  (Fourth Am. Compl. at para. 8.)  Defendants Verizon Communications and Vodafone are otherwise not

---

[3]Two pages of Exhibit A to Mr. Nason's certification were mistakenly omitted from Verizon Wireless and Verizon Communications' motion.  On July 20, 2005, after plaintiff submitted his opposition, defendants' counsel submitted a letter advising the Court of the omission and seeking leave to supplement Mr. Nason's certification with the missing pages.  Plaintiff responded by letter dated July 27, 2005 accusing defendants' of deliberately omitting the two pages "in order to carry out their evil machinations." (Letter of Emmanuel Ohai dated July 27, 2005 at 1.)  [Docket Entry No. 22.]  Defendants were nonetheless granted permission to supplement the Nason Certification and plaintiff was granted leave to submit additional briefing in response to the supplementation, which he filed in the form of a 50-page brief on August 17, 2005.  [Docket Entry No. 29.]

mentioned in the Fourth Amended Complaint. Plaintiff argues, however, that defendants have "used the unity of identity (Verizon Communications vis a viz [sic] Verizon Wireless) to their advantage and to the detriment of plaintiff" and states that the process server was confused as between the two. (Opp. Br. dated July 9, 2005 at 9-10.) Plaintiff further argues, without citation to the record, that the FCC issued a wireless license to Verizon Communications, which used its subsidiary, Verizon Wireless, to defraud the plaintiff. (Id. at 26-27.)

Plaintiff initiated this action on February 3, 2004 [Docket Entry No. 1] and, on June 10, 2005, filed his Fourth Amended Complaint [Docket Entry No. 10]. On July 5, 2005, the defendants filed the instant motions to dismiss claims against Verizon Communications and to compel arbitration of the claims against Verizon Wireless. [Docket Entry No. 13.] On August 30, 2005, defendant Vodafone filed its motion, arguing in the alternative for dismissal for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, or to compel arbitration of claims against it. [Docket Entry No. 32.]

### III.    DISCUSSION

The Court will turn first to Verizon Wireless's motion to compel arbitration, then to the motions by defendants Verizon Communications and Vodafone to dismiss.

####    A.    Verizon Wireless's Motion to Compel Arbitration

Defendant Verizon Wireless argues that the Court should dismiss plaintiff's complaint and compel arbitration of plaintiff's claims against it. Plaintiff appears to argue that the CSA is invalid for "fraud and illegality" and unconscionability.

The Federal Arbitration Act ("FAA") establishes "a strong federal policy in favor of the resolution of disputes through arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263

(3d Cir. 2003) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  Under the FAA, "such agreements are 'enforceable to the same extent as other contracts.'"  Id. (quoting Seus v. John Nuveen & Co., 146 F.3d 175, 178 (3d Cir. 1998)); see 9 U.S.C. § 2.[4]  Accordingly, the FAA provides that "[a] party to a valid and enforceable arbitration agreement is entitled to . . . an order compelling such arbitration."  Alexander, 341 F.3d at 263 (citing Seus, 146 F.3d at 179); see 9 U.S.C. § 4.[5]  Before granting such an order, a court must determine whether or not the parties entered a valid agreement to arbitrate based upon "the relevant state law of contracts."  Alexander, 341 F.3d at 264 (citations and internal quotation marks omitted).  Thus, a court may hold that an agreement to arbitrate is "unenforceable based on a generally applicable contractual defense, such as unconscionability."  Id. (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).  With these principles in mind, the Court

---

[4] 9 U.S.C. § 2 provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

[5] 9 U.S.C. § 4 provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

turns to plaintiff's arguments that the arbitration agreement is unenforceable.

### 1.      Fraud

Plaintiff argues the CSA is void for "fraud and illegality." (Pl. Br. dated August 19, 2005 at 39.) Namely, plaintiff argues the defendants (1) conceded the CSA was invalid by omitting portions of it from their original moving papers (id. at 40); and (2) the "price plan" referred to in the CSA is invalid and, thus, the entire document, including the arbitration clause, is invalid (id.).[6] Put simply, plaintiff's fraud argument is patently meritless.

First, the United States Supreme Court held in Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 403-04 (1967) that, apart from issues that go to the making of the arbitration clause itself, disputes about the very formation of the contract are arbitrable. Here, plaintiff has made no arguments directed at fraud in connection with the arbitration clause in particular. Therefore, an arbitration panel, not this Court, shall concern itself with whether or not fraud in the inducement enables the plaintiff to void the CSA.

Second, the alleged purposeful omission of pages from the Nason Certification does not support fraud. First, large portions of the CSA pages that plaintiff claims were deliberately omitted were block-quoted in the defendants' moving brief. Second, defendants brought the oversight to the attention of the Court and the plaintiff and promptly corrected it. Third, plaintiff was given the opportunity to respond to the two omitted pages and did so by way of his second 50-page opposition brief dated August 17, 2005. Nonetheless, plaintiff has seized defendants'

---

[6]Plaintiff also argues the CSA is unenforceable because he had grossly unequal bargaining power and no ability to negotiate. (Pl. Br. dated August 19, 2005 at 41.) This argument is addressed infra at part A, 2, i, in connection with plaintiff's unconscionability argument.

omission as a nefarious scheme to advance their "evil machinations." Even if this argument had some merit, the alleged fraud was not committed to induce plaintiff to enter into the arbitration agreement and, therefore, cannot support voiding it.

Third, with respect to plaintiff's "price plan" argument, plaintiff has provided no information (in his pleading or otherwise) from which this Court could find that the price plan was invalid. Even if the price plan was found invalid, however, it would not invalidate the arbitration clause within the CSA. This is especially true in light of the CSA's severability provision, which provides "[i]f any part of this agreement is held invalid, that won't have any effect on any other part, unless your or our rights or duties are materially impaired." (Nason Cert., Ex. A.)

For these reasons, plaintiff's "fraud and illegality" argument to void the CSA must fail.

    **2.**    **Unconscionability**

New Jersey courts consider two factors in determining whether or not an agreement is unconscionable: procedural and substantive unconscionability. Procedural unconcsionability is defined as "unfairness in the formation of the contract." Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564 (Ch. Div. 2002) (citations omitted). Procedural unconscionability considers the parties involved and can be shown "by a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." Id. at 564-65. Substantive unconscionability looks to the substance of the agreement and is characterized by "excessively disproportionate terms." Id. (citations omitted). Stated differently, substantive unconscionability is evidenced by terms that are "so one-sided as to shock the court's conscience." Id. (citations

omitted). In applying this analysis, courts use a "sliding scale" analysis. That is, "a claim of unconscionability can succeed when one form of it, e.g., procedural unconscionability, is greatly exceeded, while the other form of it, e.g., substantive unconscionability, is only marginally exceeded." Muhammad v. County Bank of Rehoboth Beach, 379 N.J. Super. 222, 237 (App. Div. 2005) (citing Sitogum Holdings, 352 N.J. Super. at 565-67). Unconscionability is an issue of law for resolution by the court, Gladden v. Cadillac Motor Car Div., General Motors Corp., 83 N.J. 320, 337 (1980), and the burden of proving unconscionability is on the party asserting it, Howard v. Diolosa, 241 N.J. Super. 222, 230 (App. Div. 1990).

### i.      Procedural Unconscionability

Plaintiff argues the arbitration clause is oppressive due to the inequality in bargaining power and lack of negotiation between him and Verizon Wireless and, therefore, is procedurally unconscionable. (Pl. Opp. Br. dated July 9, 2005 at 18-19.) For the foregoing reasons, the Court finds the formation of the CSA was reasonable.

Mr. Ohai does not demonstrate the badges of a disadvantaged party. As evidenced by his submissions, the plaintiff is certainly literate and capable of understanding and arguing the legal import of contractual language. Moreover, the meaning of the arbitration clause was not concealed. The CSO, which the plaintiff signed, expressly incorporates the attached CSA and states that the CSA contains an arbitration clause that "sets your and our rights concerning . . . settlement of disputes by neutral arbitration instead of jury trials and class actions." (Nason Cert., Ex. C) The arbitration clause itself is written in plain, unambiguous language and is not the subject of small print or hidden footnotes. These factors weigh heavily against a finding of

procedural unconscionability.

The plaintiff's argument regarding the lack of bargaining power and "take-it-or-leave-it" type contract is really one directed at the CSA's adhesive nature. New Jersey courts recognize that "the mere fact that a contract is adhesive does not render it unenforceable." Gras v. Assocs. First Capital Corp., 346 N.J. Super. 42, 48 (App. Div. 2001). In determining whether or not to enforce the terms of a contract of adhesion, the appropriate analysis requires a consideration of (1) the subject matter of the contract, (2) the relative bargaining powers of each party, (3) the degree of economic compulsion motivating the adhering party, and (4) the public interests affected by the contract. Muhammad, 379 N.J. Super. at 237.

While there certainly appears to be unequal bargaining power between the parties in this case, disparity will not always render a contract unconscionable. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power . . . is not sufficient reason to hold that arbitration agreements are never enforceable in the employment context"). First, plaintiff has not shown economic compulsion. Indeed, he appears to have voluntarily chosen Verizon Wireless, presumably from among other wireless telephone service providers. This is not a case where plaintiff had no choice but to sign the CSO. Second, nothing in the record establishes that plaintiff unsuccessfully sought to alter the terms of the arbitration agreement. Third, plaintiff had the opportunity and ability to read the plain language of the CSA and was fairly apprised that he was not giving up his ability to vindicate substantive rights. See DeGraziano v. Verizon Commc'ns, Inc., 325 F. Supp. 2d 238, 245 (E.D.N.Y 2004) (quoting Green Tree Fin. Corp-Alabama v. Randolph, 531 U.S. 79, 90 (2000) and holding statutory rights, such as claims under the FCRA, may be arbitrated "so long as the prospective

litigant effectively may vindicate his or her statutory cause of action in the arbitral forum."). Rather, plaintiff merely agreed to vindicate those rights in an arbitration and not a court. See Van Syoc v. Walter, 259 N.J. Super. 337, 339 (App. Div. 1992) (stating "when . . . parties agree to arbitrate, they are opting for a nonjudicial manner of resolving their disputes", and "[i]t is not whether the contract can be attacked -- but the forum in which the attack is to take place."). Accordingly, the disparity in bargaining power between the parties, viewed in light of the strong presumption of the enforceability of arbitration agreements and the absence of unfair circumstances, requires enforcement of the CSA's arbitration clause. The Court therefore finds that the CSA is not procedurally unconscionable.

### ii.   Substantive Unconscionability

Plaintiff argues the CSA is substantively unconscionable because it (1) contains no terms dealing with arbitration costs (Pl. Br. of July 9, 2005 at 19, 20); and (2) allows Verizon Wireless to unilaterally modify or terminate the CSA and, thus, the promise of arbitration is not mutual (id. at 19-20).

The arbitration clause requires both parties to arbitrate claims and be subject to the American Arbitration Association's Wireless Industry Arbitration ("WIA") rules. The WIA rules provide for the exchange of written discovery, the appointment of neutral arbitrators with the ability to challenge their neutrality, and a schedule of fees. (See generally Marx Reply Cert., Ex. B.) These rules apply to both parties to the arbitration agreement and the CSA does not appear to modify the rules in any way that would unfairly advantage Verizon Wireless. The CSA, which incorporates and refers to the WIA rules, adequately sets forth the procedure by which disputes

are resolved and does not unduly favor one side over another. Accordingly, the arbitration clause cannot be invalidated for lack of mutuality.

Plaintiff's argument regarding Verizon Wireless's ability to modify the CSA does not support a finding of substantive unconscionability. To the extent the CSA purports to allow Verizon Wireless to change the terms of the agreement, it must do so by giving written notice before the billing period in which the changes go into effect. Upon receipt of such written notice, the plaintiff may accept those changes and continue using the service under the revised agreement or reject them and cancel the CSA. It does not appear from the CSA that plaintiff is obligated to arbitrate claims while Verizon Wireless may elect to resolve disputes in some other forum. Rather, if the defendants attempted to modify the CSA in a way that would allow them to evade the arbitration requirement, the customer could reject the changes and proceed with the arbitration of claims that arose from or related to the CSA up to that point. In short, the face of the CSA does not evidence the lack of mutuality among the parties and, for this further reason, the CSA is not substantively unconscionable.

Accordingly, the Court holds the arbitration agreement between plaintiff and Verizon Wireless is enforceable and plaintiff's claims against Verizon Wireless are dismissed.

   **B.**  **Verizon Communications and Vodafone's 12(b)(6) Motion**

Defendant Verizon Communications argues that plaintiff's Fourth Amended Complaint fails to state a claim upon which relief can be granted and, therefore, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Verizon Def.'s Br. at 13-17.) Defendant Vodafone advances largely the same argument in its motion to dismiss. (See Vodafone's Br. at

8-12.) In opposition, plaintiff argues his pleading adequately alleges a claim for piercing the corporate veil to impose liability upon Verizon Communications. (Pl.'s Opp. Br. dated July 9, 2005 at 26.) He argues that the FCC issued a license to Verizon Communications, which in turn misused that license to defraud plaintiff through its subsidiary, Verizon Wireless. (Id. at 26-27.) Plaintiff further argues Verizon Communications should be liable for Verizon Wireless's conduct because (1) it uses the same office location and collection procedure; (2) it employs the same attorneys and have common board members; and (3) Verizon Communications, with whom plaintiff previously dealt for his home telephone service, "gave their subsidiary Verizon Wireless business when [he] signed up for cell phone service." (Id. at 31-32.) Plaintiff argues Vodafone should be held liable because of an "agency" relationship between it and Verizon Wireless. (Pl.'s Opp. to the Vodafone's Brief at 12.)

          **1.**        **Motion to Dismiss Standard**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). But a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410,

1429-30 (3d Cir. 1997) (citations omitted); Prevard v. Fauver, 47 F. Supp. 2d 538, 542 (D.N.J. 1999) (citing Miree v. DeKalb County, Ga., 433 U.S. 25 (1977) and holding a court need not accept as true "legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations."). If, after viewing the allegations in the complaint in a light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim.[7] Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982). The Court is mindful that plaintiff is pro se and, therefore, to grant defendants' motion, it must "find that it is clear 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982) (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972)).

    **2.**    **Piercing the Corporate Veil**

In analyzing plaintiff's pleading, the Court begins with "the fundamental propositions that a corporation is a separate entity from its shareholders, . . . and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." State Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500-01 (1983) ("Ventron") (citations omitted). This is so even between a parent corporation and its wholly-owned subsidiary. Id.

---

[7] With respect to the specificity of plaintiff's claims, Federal Rules of Civil Procedure 8(a) requires a "a short and plain statement of the claim showing that the pleader is entitled to relief." This requires "simple, concise, and direct" allegations. Fed. R. Civ. P. 8(e). In allegations of fraud, however, Rule 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity." Thus, where a party alleges fraud, it must do so with greater specificity than the normal "short and plain" statement required under Rule 8.

(citing Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 34 (1950)).  Plaintiff argues that his pleading adequately asserts a cause of action against Verizon Communications for piercing the corporate veil and against Vodafone under an agency theory.

The equitable remedy of piercing the corporate veil is available to prevent a corporation from being used to defeat the ends of justice.  To assert a cause of action for piercing the corporate veil, a plaintiff must allege (1) the parent corporation "so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent," and (2) "the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law."  See Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir. 1988) (quoting Ventron, 94 N.J. at 501).

To display the requisite "control" over a subsidiary necessary to pierce the corporate veil, a corporate parent must have more than mere majority or complete stock control.  Craig, 843 F.2d at 150.  Rather, it must completely dominate the finances, policy, and business practice with respect to the subject transaction.  Id.  This influence must have been such that "the corporate entity as to this transaction had at the time no separate mind, will or existence of its own."  Id. (citations omitted).

For example, in Ventron, the parent, Velsicol owned 100% of the stock of the subsidiary, Wood Ridge; all of Wood Ridge's directors were Velsicol officers, and the Wood Ridge board of directors met monthly at Velsicol's Chicago offices to discuss Wood Ridge's financial statements, product development, public relations, and daily operations.  94 N.J. at 484.  The New Jersey Supreme Court found that this activity supported a finding that Velsicol personnel,

directors, and officers were constantly involved in the day-to-day operations of Wood Ridge's business, but this "was not sufficient to support the further conclusion that the intrusion of Velsicol into Wood Ridge's affairs reached the point of dominance." Id. at 501. Given the lack of "dominance" by Velsicol over Wood Ridge, and because the Ventron court thought that the subsidiary had not been incorporated for an "unlawful purpose," the Court held that the common-law doctrine of piercing the corporate veil did not apply. Id. at 501-02.

Notably, although allegations of abuse of the corporate form "to perpetrate a fraud or injustice, or otherwise to circumvent the law" are necessary to assert a claim for piercing the corporate veil, see Craig, 843 F.2d at 149, at least one court in this district found that it is not clear that the specificity requirements of Federal Rule of Civil Procedure 9(b) apply. See Allied Corp. v. Frola, 701 F. Supp. 1084, 1088-89 (D.N.J. 1988). Where a corporate veil piercing claim based on allegations of fraud, the Court will pay particular attention to Rule 8(a)(2)'s requirement that "the complaint must put the opposing party on fair notice of the nature and grounds of the claim." Id. (citations omitted). With these principles in mind, the Court turns to plaintiff's Fourth Amended Complaint.

Plaintiff's pleading does not support imposing alter ego liability against either Verizon Communications or Vodafone. The only factual allegations that could pertain to "dominance" by Verizon Communications or Vodafone is their alleged 55% and 45% stakes in Verizon Wireless, respectively. While ownership may be one consideration under New Jersey law, however, even allegations that a parent company owns 100% of the shares of a subsidiary are insufficient to pierce the corporate veil without showing corporate "dominance" by the parent company. Nothing in the Fourth Amended Complaint, or in plaintiff's opposition papers, could support the

conclusion that these defendants so controlled Verizon Wireless that it had "no separate mind, will or existence of its own" with respect to its wireless telephone billing and collection practices.  Craig, 843 F.2d at 150.  Absent from plaintiff's papers are any claims that Verizon Communications or Vodafone influenced the finances, policy, and business practice with respect to the billing of Verizon Wireless consumers.  Any allegations remotely resembling indicia of corporate dominance are limited to plaintiff's conclusions about Verizon Communications and Vodafone's malicious intent and use of Verizon Wireless to perpetrate a fraud upon him, which the Court need not accept as true.  See Prevard, 47 F. Supp. 2d at 542.

     Even assuming the element of dominance was properly pled, plaintiff has further failed to adequately plead that the shareholder companies have "abused the privilege of incorporation by using [Verizon Wireless] to perpetrate a fraud or injustice, or otherwise to circumvent the law."  Craig, 843 F.2d at 149.  Although plaintiff claims Verizon Wireless has improperly "crammed" the plaintiff's wireless phone bills and mishandled the collection and reporting of plaintiff's alleged debt, there are no allegations that would even suggest that it was really Verizon Communication or Vodafone, acting through their subsidiary, that committed the allegedly offensive conduct.  Moreover, with respect to plaintiff's agency argument, nothing in the pleadings or otherwise suggests that the relationship between Vodafone and Verizon Wireless is anything more than that between a company and its shareholders.

     In short, the Court reiterates that corporations are separate entities from their shareholders.  Plaintiff has not given the Court any reason, by way of allegation or otherwise, to ignore this fundamental principle and grant the equitable relief of piercing the corporate veil.  Indeed, it is not apparent that plaintiff could prove any set of facts consistent with his pleading

under which relief could be granted.  Accordingly, plaintiff's claims against both Verizon Communications and Vodafone are dismissed.[8]

IV.    **CONCLUSION**

For all of these reasons, the Court holds (1) the arbitration agreement between plaintiff and Verizon Wireless is enforceable and, therefore, plaintiff's claims against that defendant are stayed subject to the terms of the arbitration agreement; and (2) plaintiff's Fourth Amended Complaint fails to state a claim upon which relief can be granted against Verizon Communications, Inc. and Vodafone, Plc. and, therefore, plaintiff's claims against those defendants are dismissed.  An appropriate Order will follow.

October 24, 2005

s/Stanley R. Chesler<br>
United States District Judge

---

[8] As a matter of contract interpretation, had it reached the issue, the Court would have held that the CSA, which requires arbitration of claims between plaintiff and Verizon Wireless "OR, ANY OF [its] AFFILIATES," would include plaintiff's claims against Verizon Communications and Vodafone.  The Court need not reach Vodafone's arguments regarding whether or not it is subject to personal jurisdiction in this Court.  The Court did not consider that issue and nothing in this opinion should be construed as a finding one way or the other.